# NO. 12-17-00224-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR THE* | *§* | *APPEAL FROM THE* |
| *BEST INTEREST AND PROTECTION* | *§* | *COUNTY COURT* |
| *OF J. G.* | *§* | *CHEROKEE COUNTY, TEXAS* |

## MEMORANDUM OPINION

J.G. appeals from an order authorizing the Texas Department of State Health Services to administer psychoactive medication. In his sole issue, J.G. challenges the legal and factual sufficiency of the evidence to support the trial court's order. We affirm.

## BACKGROUND

J.G. was found incompetent to stand trial and was committed to the Rusk State Hospital for examination and treatment with the specific objective of his attaining competency. Appellant refused to take medication prescribed for his condition and he denied needing medication. On June 30, 2017, his treating physician, Dr. Stephen Poplar, signed an application to order the administration of psychoactive medications.

After a hearing, the trial court signed an order authorizing the administration of psychoactive medication. In its order, the trial court stated that the allegations in Poplar's application are supported by clear and convincing evidence. The trial court concluded that J.G. lacks the capacity to make a decision regarding the administration of psychoactive medication and that treatment with the proposed medication is in J.G.'s best interest. This appeal followed.

In his sole issue, J.G. maintains that the evidence is legally and factually insufficient to support the trial court's order. He maintains that the evidence fails to demonstrate that he lacked the capacity to make a decision regarding the administration of the proposed medication.

**Standard of Review**

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*. This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, we consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27–29. Further, we must consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

**Applicable Law**

A trial court may issue an order authorizing the administration of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (West 2017). The trial court must find, by clear and convincing evidence, that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication and (2) treatment with the proposed medication is in the patient's best interest. *Id*. § 574.106(a–1). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v.*

2

***Addington***, 588 S.W.2d 569, 570 (Tex. 1979). "Capacity" means a patient's ability to (1) understand the nature and consequence of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.101(1) (West 2017). The trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the patient's perspective, of taking psychoactive medication, (4) the consequences to the patient if the medication is not administered, (5) the patient's prognosis if treated with psychoactive medication, (6) alternatives to treatment with psychoactive medication, and (7) less intrusive treatments likely to secure the patient's agreement to take psychoactive medication. *Id*. § 574.106(b).

**Analysis**

J.G.'s sole contention is that the evidence is legally and factually insufficient to support a finding that he lacked the capacity to make a decision regarding the administration of psychoactive medication. *See id*. § 574.106(a-1). He relies on this Court's opinion in ***State ex. rel. E.G.***, 249 S.W.3d 728 (Tex. App.–Tyler 2008, no pet.) to support his position.

In ***E.G.***, there was no evidence at the hearing regarding E.G.'s mental illness or why Dr. Jon Guidry believed E.G. lacked the capacity to make a decision regarding administration of psychoactive medications. *Id*. at 731-32. We explained that "a conclusory statement in the application, without any testimony from a physician at the hearing, cannot produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. We also noted that the Texas Health and Safety Code does not authorize the trial court to base its findings solely on the treating physician's application, because pleadings, such as the physician's application, are not evidence that the statutory standard has been met. *Id*. at 731; *see* TEX. HEALTH & SAFETY CODE ANN. §§ 574.031(e) (West 2017) (stating that the Texas Rules of Evidence apply to the hearing for court ordered mental health services unless the rules are inconsistent with this subtitle), 574.101–.110 (West 2017). Because the record contained nothing more than the physician's conclusory statement in the application, we concluded that "a reasonable trier of fact could not have formed a firm belief or conviction that E.G. lacked the capacity to make a decision regarding administration of the proposed medications[.]" ***E.G.***, 249 S.W.3d at 731–32.

3

The present case is not one that rests on conclusory statements in an application to administer psychoactive medication. In his application, Dr. Poplar stated that J.G. had been diagnosed with (1) bipolar disorder, most recent episode manic, and severe with psychotic features; and (2) rule-out schizoaffective disorder, bipolar type. Poplar sought to administer medication through oral and intramuscular methods, i.e., the customary methods of administration. According to Poplar, J.G. verbally refused to voluntarily take medication. Poplar stated his belief that J.G. lacked capacity to make decisions regarding the administration of psychoactive medications because he claims to have no mental illness and not require hospitalization. Poplar further explained that "[b]y not acknowledging his mental illness, [J.G.] cannot rationally weigh the risk and benefits of treatment." He believed that medication was the proper course of treatment for J.G., and that J.G.'s prognosis, with medication, is "fair." If not treated with medication, J.G. would suffer further psychotic decompensation, increased risk of harm to others, and the risk of treatment refracting psychosis. Poplar further stated that he considered less intrusive treatments and medical alternatives, but that none would be as effective as psychoactive medication. He believed that the benefits of medication outweighed the risks in relation to present medical treatment and were in J.G.'s best interest. He sought to administer antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedative/hypnotics.

In addition to the statements in Poplar's application, the trial court heard testimony from both Dr. Larry Hawkins and J.G. at a hearing on the application. Hawkins testified that Poplar is J.G.'s treating physician, but that he had also evaluated J.G. He acknowledged that J.G. is under an order for inpatient mental health services. He testified that J.G.'s diagnosis is bipolar disorder, Type I, most recent episode manic, severe with psychotic features. Hawkins testified that J.G. verbally refused to take medication and he believed that J.G. lacks the capacity to make that decision. He explained that J.G. "very clearly states he has no mental illness[,]" even though his record, history, and evaluations by three doctors, including Poplar and Hawkins, reflects that he has bipolar disorder, a mental illness, and needs medication. He agreed that J.G.'s diagnosis and denial of mental illness shows a lack of capacity to make a decision as to the administration of medication. Hawkins did not believe that J.G. could understand and appreciate the risks versus the benefits of medication.

Hawkins acknowledged that the proposed medications are the proper course of treatment, are in J.G.'s best interest, the benefits will outweigh the risks, and his inpatient stay will be

4

shorter with the medication. He did not believe that J.G. could regain his competency without the medication. He testified that if the medication interfered with J.G.'s ability to communicate with his attorney, changes could be made, such as dosage reduction. He testified that J.G. mentioned side effects from one medication, but that other medications could be tried. When Hawkins testified that J.G. either could not remember or would not disclose the names of the medication he took in the past, J.G. interjected with "That's not accurate."

Hawkins further testified that there were no religious or constitutional objections from J.G. to taking the proposed medication. J.G. again interjected, stating "There's no need for medicine or…" He briefly interrupted Hawkins's testimony several other times. Hawkins testified that J.G. had been calm and reasonably cooperative except with respect to taking medication. Hawkins's testimony indicates an inability to engage in rational conversation with J.G. regarding the administration of psychoactive medication, as he testified that J.G. immediately responds to attempts at such conversations with claims that he does not need medication. At this point, J.G. interrupted, stating, "there's no reason for it." Hawkins stated that he asked J.G. about his previous hospitalization, to which J.G. replied that "somebody conned the court into telling them that I should go to a hospital and I had to go to the hospital[.]" He testified that J.G. admitted being forced to take medicine during a previous hospitalization.

J.G. testified that medication gives him a headache and makes him "groggy." He then testified as follows:

> …There's no real need to waste my time with hospital or medication. I'm fully competent. I did an assessment with Dr. Hawkins a couple of days ago. I passed his assessment, and accepting paperwork that was furnished within the one-day period, it would be wrong. I mean, anybody could draw up paperwork and accuse a guy of meds or hospital or admitting him and have him committed to a place where he's not from. I'm from Miami, your Honor. This happened and -- on a airline. I was fully booked on a round-trip ticket.
> …
> So none of this is necessary. It's just I could go to court. I would tell that judge, you know, if you could please dismiss the charge for employment purposes. I would go to another airline, purchase a ticket to be on my way … on my business -- about my business.

He testified that he was previously diagnosed with a mental illness, but that it was "ridiculous" and he disagreed with the diagnosis. He admitted previously taking psychoactive medication because he had not been heard and doctors had furnished paperwork in one day. He claimed to be competent and denied being found incompetent. Hawkins testified that J.G. believes he

passed Hawkins's assessment and that his criminal actions, i.e., striking police officers, were justified.

The right to refuse treatment, and the right of patients, generally, to direct the course of their treatment are important. Although by its very nature, involuntary treatment is against the stated wishes of a patient, the trial court was not required to simply defer to J.G.'s beliefs or preferences when determining whether to order the administration of psychoactive medication. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b). Moreover, J.G.'s testimony itself demonstrates his inability to (1) understand the nature and consequence of a proposed treatment, including the benefits, risks, and alternatives thereto, and (2) make a decision whether to undergo the proposed treatment. *See id*. § 574.101(1). The trial court also had the opportunity to observe J.G.'s behavior during the hearing. Such behavior included numerous outbursts, such as exclamations that medication was not needed.

Accordingly, viewing all the evidence in the light most favorable to the trial court's findings, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that J.G. lacked the capacity to make a decision regarding the administration of the proposed medications. *See id*. § 574.106(a-1); *see also **In re J.F.C.***, 96 S.W.3d at 266. Reviewing the record as a whole, we also conclude that the conflicting evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding. *See **In re J.F.C.***, 96 S.W.3d at 266. The trial court could have formed a firm belief or conviction that J.G. lacked the capacity to make a decision regarding administration of the proposed psychoactive medications. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1); *see also **In re C.H.***, 89 S.W.3d at 25. Because the evidence is legally and factually sufficient to support the trial court's order, we overrule J.G.'s sole issue.

## DISPOSITION

Having overruled J.G.'s sole issue, we ***affirm*** the trial court's order authorizing the Texas Department of State Health Services to administer psychoactive medication.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 30, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 30, 2017**

**NO. 12-17-00224-CV**

**THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF J. G.**

Appeal from the County Court

of Cherokee County, Texas (Tr.Ct.No. 42137)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order authorizing the administration of psychoactive medications.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below authorizing the administration of psychoactive medications **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*